ABRAM F. DOREMUS *et al.*

*v.*

MARY G. HENNESSY.

*Opinion filed October 24, 1898—Rehearing denied December 20, 1898.*

1. CONSPIRACY—*all parties to a conspiracy to ruin business of another are liable for loss.* All parties to a conspiracy to ruin the business of another because of his refusal to do some act against his will or judgment, are liable for all overt acts illegally done in pursuance of such conspiracy and for the consequent loss, whether they were active participants or not.

2. SAME—*a boycott is an actionable wrong.* Members of a labor union have no right to insist that another person unite with them or fix his scale of prices the same as that of the union, and make his refusal a pretext to break up his business by inducing his customers to break their contracts and stop dealing with him.

3. PERSONAL RIGHTS—*malicious interference with another's business is actionable.* Every man has a right to full freedom in disposing of his own labor or capital, and any one who maliciously invades that right by misrepresentation, intimidation, obstruction or molestation is liable for the loss thereby occasioned.

4. SAME—*malicious interference with business is not lawful competition.* Lawful competition does not give rise to an action for damages, even though it results in driving another out of business; but malicious interference with another's business for the sole purpose of injuring or destroying it, such as the inducing of third parties to break their contracts with the latter, is not lawful competition.

5. APPEALS AND ERRORS—*question of proximate and remote cause is not open in the Supreme Court.* Whether the injury sustained by the plaintiff was the direct result of the acts of the defendants in inducing others to break their contracts with the plaintiff, or was the result of the independent acts of the parties to such contracts, is a question of fact not open to review in the Supreme Court.

*Doremus* v. *Hennessy*, 62 Ill. App. 391, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

HOWARD HENDERSON, and FRANCIS W. WALKER, for appellants:

Appellants cannot be held liable for the mere inducing of others to break their contracts, the parties who broke their contracts being the only ones liable. They were free agents, and not coerced or influenced by force or fraud. *Chambers* v. *Baldwin*, 91 Ky. 122; *Ashley* v. *Dixon*, 48 N. Y. 430; *Payne* v. *Railroad Co.* 81 Tenn. 508; *Heywood* v. *Tillison*, 75 Me. 225; *Bourlier Bros.* v. *McCauley*, 91 Ky. 136; *Cote* v. *Murphy*, 159 Pa. St. 420.

Appellants cannot be held liable for independent intervening causes of damage in themselves sufficient to cause the injury complained of. Cooley on Torts, (2d ed.) 76; *Dale* v. *Grant*, 34 N. J. 142; *Insurance Co.* v. *Boscher*, 39 Me. 253; *Anthony* v. *Slaid*, 11 Metc. 290; *Silver* v. *Frazier*, 3 Allen, 382; *Watson* v. *People*, 27 Ill. App. 496; *Tweed* v. *Insurance Co.* 7 Wall. 44; *Sharp* v. *Powell*, L. R. 7 C. P. 253; *Denny* v. *Railroad Co.* 13 Gray, 48; *Cuff* v. *N. & N. Y. Co.* 35 N. J. L. 17; *Morrison* v. *Davis*, 20 Pa. St. 171; *M. & C. R. Co.* v. *Reeves*, 10 Wall. 176; *Rockford* v. *Tripp*, 83 Ill. 247; *Murphy* v. *Railroad Co.* 65 N. W. Rep. 753; *Lamback* v. *Railroad Co.* 64 id. 479; *Scott* v. *Railway Co.* 33 Atl. Rep. 712; *Jamieson* v. *Railway Co.* 23 S. E. Rep. 758.

The acts of appellants in inducing parties to break their contracts with appellee were not merely malicious

acts, done solely with the intent to injure her, but were in the line of legitimate trade competition, and for this they cannot be held liable.. *Bourlier Bros.* v. *McCauley,* 91 Ky. 136; *Mogul Steamship Co.* v. *McGregor,* 23 L. R. Q. B. Div. 598; *Chambers* v. *Baldwin,* 91 Ky. 122; *Benjamin* v. *Wheeler,* 8 Gray, 409; *Stevenson* v. *Newham,* 76 Eng. C. L. 281; *Jenkins* v. *Fowler,* 24 Pa. St. 308; *Phelps* v. *Nowlen,* 72 N. Y. 43; *Heywood* v. *Tillison,* 75 Me. 225; *Insurance Co.* v. *Board of Fire Underwriters,* 67 Fed. Rep. 310.

That the acts which appellants are charged to have done were done in pursuance of a conspiracy does not create any liability. In the civil action of conspiracy the damage illegally done, and not the conspiracy, is the gist of the action. *Wellington* v. *Small,* 3 Cush. 145; *Mogul Steamship Co.* v. *McGregor,* 23 L. R. Q. B. Div. 598; *Payne* v. *Railroad Co.* 81 Tenn. 508.

TUTTLE & GRIER, for appellee:

An action will lie for damages resulting from inducing one to break a contract, if done without justifiable cause and with the intention of injuring the plaintiff. *Lumley* v. *Gye,* 2 E. & B. 216; *Bowen* v. *Hall,* L. R. 6 Q. B. Div. 333; *Walden* v. *Conu,* 84 Ky. 312; *Haskins* v. *Royster,* 70 N. C. 601; *Jones* v. *Stanley,* 76 id. 355; Cooley on Torts, pp. 280, 281; *Carew* v. *Rutherford,* 106 Mass. 1; *Walker* v. *Cronin,* 107 id. 555; *Chipley* v. *Atkinson,* 1 So. Rep. 934; *Delz* v. *Winfree,* 16 S. W. Rep. 111; *Moores & Co.* v. *Bricklayers' Union,* 7 Ry. & Corp. L. J. 108; *Mogul Steamship Co.* v. *McGregor,* 15 L. R. Q. B. Div. 476; 21 id. 544; 23 id. 598; *Chesley* v. *King,* 74 Me. 164.

In order to render the defendants liable for willfully inducing parties to break their contract or contracts with the plaintiff, done by the defendants with the intention of causing injury to the plaintiff without right or justifiable cause, and from which acts damage results to the plaintiff, it is not necessary such inducements should be with either force, fraud, threats or intimidations. Such

inducement on the part of the defendants will give a cause of action if consisting merely of advising or arguing that it would be to the business interest of the one breaking the contract, if such acts were done by the defendants maliciously, without right or justifiable cause, and with the intention of injuring the plaintiff, if damages actually result therefrom. *Lumley* v. *Gye*, 2 E. & B. 216; *Bowen* v. *Hall*, L. R. 6 Q. B. Div. 333; *Walker* v. *Cronin*, 107 Mass. 555; *Carew* v. *Rutherford*, 106 id. 1; *Delz* v. *Winfree*, 16 S. W. Rep. 111; *Chipley* v. *Atkinson*, 1 So. Rep. 834.

Malice is the intent to injure another, without right or justifiable cause. *Moores & Co.* v. *Bricklayers' Union*, 7 Ry. & Corp. L. J. 108; *State* v. *Coella*, 28 Pac. Rep. 28; *Lovett* v. *State*, 11 So. Rep. 550; *The Territory* v. *Egan*, 3 Dak. 119; *Buckley* v. *Knapp*, 48 Mo. 152; *Tuttle* v. *Bishop*, 30 Conn. 80; *Mitchell* v. *Wall*, 111 Mass. 498.

Whether or not an act is the proximate cause of injury is a question for the jury upon the evidence, under appropriate instructions, and when passed on by the Appellate Court is not subject to review in this court. *Wright* v. *Railway Co.* 27 Ill. App. 200; *Fent* v. *Railway Co.* 59 Ill. 349; *Pullman Palace Car Co.* v. *Bluhm*, 109 id. 20; *Mt. Carmel* v. *Howell*, 137 id. 91; *Meyer* v. *Butterbrodt*, 146 id. 131.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellee instituted an action on the case, alleging that in 1890, and several years prior thereto, she was conducting a laundry office in the city of Chicago, where she received clothing from various customers, to be laundered; that she did not own a laundry plant herself, but employed other operating laundries, who, when the work was done, returned the same to her for delivery to her customers; that she had built up a good and profitable business; that appellants conspired to injure her in her good name and credit, and to destroy her business, because she would not increase the price charged by her

to customers in accordance with the scale of prices fixed by an organization known as the Chicago Laundrymen's Association, and to that end willfully and unlawfully, by intimidation and unlawful inducements, caused parties who were doing her work (five of whom were mentioned in the declaration) to refuse to longer do the same, and by threats, intimidation, false representations and unlawful inducements caused others who were operating laundries (who were specifically designated in a bill of particulars) to refuse to take or do her work; that this was done for no justifiable purpose, but to cause loss to the plaintiff and injure and destroy her business; that various persons with whom she had engagements to so do her work, in consequence of the acts of the appellants broke their contracts with her, and the business she had built up as a laundry agent was destroyed and entirely broken up, and she thereby sustained great loss and damage by reason of appellants so contriving, plotting and conspiring, by the means aforesaid, to break up and destroy her said business.

The evidence shows that plaintiff had a contract with one Miller, who operated a laundry, and who agreed to do her work and give her two weeks' notice before he would quit doing it, and that through the interference of appellants he refused to do her work without giving the notice agreed on. Subsequently she applied to other laundrymen, who agreed to do her work as long as the laundry association did not interfere. She made arrangements with other laundries, by written agreement, by which her work was to be done. In one case the contract was for a year, and according to the testimony in this record that contract was broken by the party contracting with her almost as soon as made. One contract with Joseph Apple, by which her laundry work was to be done for one year, was violated. The officers of this association, as testified to by the witness who entered into the contract with appellee, interfered, and sought to injure the plaintiff by

having him keep back her work, retaining it as long as possible, to her detriment, and also by having him retain parts of the work. He testifies: "They told me that they would give me $300, a horse and wagon, and enough work to keep me going, provided I would keep back her work and retain it as long as I possibly could, to the detriment of her patronage. That was at the first meeting, and I agreed to that. I kept a bundle out. At the second meeting they made threats to me if I didn't accept that they would ruin my business at any rate, as well as hers." Another witness who agreed to do her work as long as the laundry association would let him alone, was induced, by threats of destroying his business, to cease connection in business with appellee. The evidence shows that appellants were active in inducing these various breaches of contract, as well as other contracts entered into between her and various parties engaged in operating laundries.

Issues were joined, and upon a trial in the circuit court of Cook county defendants were found guilty and the plaintiff's damages were assessed by a jury at $6000. Motions for a new trial and in arrest of judgment were overruled and judgment was entered on the verdict, to which defendants excepted. On appeal to the Appellate Court for the First District the judgment was affirmed, and this appeal is prosecuted.

The contention of appellants is, that they cannot be held liable for merely inducing others to break their contracts; that the parties who broke their contracts were the only ones liable, they being free agents and not coerced or influenced by force or fraud; that their acts in inducing parties to break their contracts with appellee were not mere malicious acts, done solely with the intent to injure her, but were in the line of legitimate trade competition, for which they cannot be held liable; nor can they be held liable, they claim, for acts which are charged to have been done in pursuance of a conspiracy, as it is insisted that a conspiracy does not create a liability in

a civil action, as the damage illegally done, and not the conspiracy, must be the gist of the action.

The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require. Losses willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss. A conspiracy may, when accompanied by an overt act, create a liability, by reason of the fact that one or more conspirators may do an unlawful act which causes damage to another, by which all those engaged in the conspiracy for the accomplishment of the purpose for which the injury was done, and which was done in pursuance of the conspiracy, would be alike liable, whether actively engaged in causing the loss or not. For acts illegally done in pursuance of such conspiracy, and consequent loss, a liability may exist against all of the conspirators. Appellants, and those persons who refused to do appellee's work, had each a separate and independent right to unite with the organization known as the Chicago Laundrymen's Association, but they had no right, separately or in the aggre-

gate, with others, to insist that the appellee should do so, or to insist that appellee should make her scale of prices the same as that fixed by the association, and make her refusal to do this a pretext for destroying and breaking up her business. A combination by them to induce others not to deal with appellee or enter into contracts with her or do any further work for her was an actionable wrong.

Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong, and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong. Damage inflicted by fraud or misrepresentation, or by the use of intimidation, obstruction or molestation, with malicious motives, is without excuse, and actionable. Competition in trade, business or occupation, though resulting in loss, will not be restricted or discouraged, whether concerning property or personal service. Lawful competition that may injure the business of another, even though successfully directed to driving that other out of business, is not actionable. Nor would competition of one set of men against another set, carried on for the purpose of gain, even to the extent of intending to drive from business that other set and actually accomplishing that result, be actionable unless there was actual malice. Malice, as here used, does not merely mean an intent to harm, but means an intent to do a wrongful harm and injury. An intent to do a wrongful harm and injury is unlawful, and if a wrongful act is done to the detriment of the right of another it is malicious, and an act maliciously done, with the intent and purpose of injuring another, is not lawful competition. In this case it is clear the evidence sustained the allegations of the plaintiff's declaration, and there is here no contention on the facts. The principles herein announced are sustained by the weight of

authority in England and in this country.  *Lumley* v. *Gye*,
2 E. & B. 216;  *Blake* v. *Lanyon*, 6 T. R. 22;  *Sykes* v. *Dixon*,
9 A. & E. 693;  *Pilkington* v. *Scott*, 15 M. & W. 657;  *Hartley* v.
*Cummings*, 5 Com. B. 247;  *Bowen* v. *Hall*, L. R. 6 Q. B. Div.
333;  *Carew* v. *Rutherford*, 106 Mass. 1;  *Walker* v. *Crowen*, 107
id. 555;  *Chipley* v. *Atkinson*, 1 South. Rep. 934;  *Delz* v. *Win-
free*, 165 West. Rep. 111;  *Curran* v. *Galen*, 22 N. Y. Sup. 826;
*VanHorn* v. *VanHorn*, 52 N. J. L. 284.

In *Mogul Steamship Co.* v. *McGregor, Gow & Co.* L. R. 15
Q. B. Div. 476, Lord Coleridge said: "It seems that a large
number of important and rich ship owners joined together
and have issued two circulars or documents to the dif-
ferent traders and their agents with whom they had been
in the habit of dealing in the tea and other trades in
China, to the effect that if the persons whom that circu-
lar reached and was meant to affect should deal with the
plaintiffs or plaintiffs' ship, they, the defendants, would
deny them all the benefits, or at least a very large and
substantial benefit, which had accrued to them in their
dealing with the defendants; that if the persons to whom
they addressed the circulars would deal exclusively with
them they should have certain advantages at their hands.
*  *  *  It is conceivable that if such a conspiracy,—be-
cause conspiracy undoubtedly it is,—were proved in point
of fact, were made out to be, not the mere honest support
of a defendant's trade, but the destruction of the plain-
tiffs' trade and their consequent wrong as merchants, it
would be an offense for which an indictment for conspir-
acy, and if an indictment then an action for conspiracy,
would lie;  *  *  *  that the conspiracy to do the thing
which has been called by the name of 'boycotting' is un-
lawful and an indictable offense, and if so, then a thing
for which an action will lie.   An action may well lie for
that which is complained of here."

It is urged by appellants that they cannot be held liable
for inducing certain persons named in the declaration to
terminate their contractual relations with appellee, be-

cause their acts could not produce the injuries complained of without an independent force which was the act of the parties themselves, and these appellants, it is urged, can not be held liable for an intervening cause of damage sufficient to cause the injury; and that the refusal of different persons to work for the appellee was sufficient, of itself, to occasion injury, for which the appellants cannot be held responsible. The first branch of this proposition has been disposed of by what we have heretofore said, and the authorities above cited. In *Lumley* v. *Gye, supra,* it was said: "He who maliciously procures a damage to another by a violation of his right ought to be made to indemnify." In *Bowen* v. *Hall, supra,* it was said: "Merely to persuade the person to break his contract may not be wrongful in law or in fact, but if the persuasion be used for the direct purpose of injuring the plaintiff * * * it is actionable, if injury ensues from it." The second branch of the proposition, in which it is urged that appellants could not produce the injuries complained of without the intervention of an independent force, presents the question whether the proximate cause of the injury is a question of fact. It has been settled by the adjudication of this State, so far as this question is here concerned, that in this State what was the cause of the injury, or the combination of causes producing it, is a question of fact. Whether the injury and damage sustained by plaintiff resulted from the acts of the defendant or were the result of a new, independent factor for which appellants were not responsible, cannot be determined by the court as a question of law, unless the fact be conceded or the proof be substantially all to that effect. (*Pullman Palace Car Co.* v. *Bluhm,* 109 Ill. 20; *City of Mt. Carmel* v. *Howell,* 137 id. 91; *Meyer* v. *Butterbrodt,* 146 id. 131.) The finding of the trial and Appellate Courts on this question is not subject to review in this court.

It is next insisted that the damages are excessive. This has so repeatedly been held to be an error which can

not be assigned in this court that citation of authority will be unnecessary.

What has been said in the discussion of the questions heretofore presented effectually disposes of all questions raised on giving, refusing and modifying instructions.

The judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county is affirmed.                    *Judgment affirmed.*

Subsequently, upon considering the petition for a rehearing in this case, the following additional opinion was delivered by Mr. JUSTICE PHILLIPS:

Appellants present their petition for a rehearing of this cause, and have brought to the attention of the court the case of *Allen* v. *Flood*, decided by the House of Lords in Great Britain, which was not accessible at the time the opinion in this case was written. Since the petition for rehearing was presented counsel have procured a full report of that case and brought the same to the attention of the court. From that case it appears that boiler-makers in common employment with the respondents, Flood and another, who were shipwrights working on wood, objected to working with the latter on the ground that in a previous employment they had been engaged on iron work. The appellant, an official of the boiler-makers' union, in response to a telegram from one of the boiler-makers, came to the yard and dissuaded the men from immediately leaving their work, as they threatened to do, intimating that if they did so he would do his best to have them deprived of the benefits of the union and also fined; that they must wait till the matter was settled. The appellant, Allen, then saw the managing director, to whom he said that if the respondents, who were engaged from day to day, were not dismissed, the boiler-makers would leave their work or be called out. Respondents were thereupon dismissed. The men so discharged instituted their action against the official of the boiler-makers'

union, and obtained judgment, which was affirmed by the court of appeal, and on appeal to the House of Lords the assistance of the judges was requested, and the question submitted to the judges was: "Assuming the evidence to be given by the plaintiffs' witnesses to be correct, was there any evidence of a cause of action fit to be left to the jury?" Six of the eight judges answered in the affirmative and two in the negative. It appears there was no contract, as the men were engaged by the day, and were liable to be discharged at the close of any day without a breach of contract; that the only question presented by that case was, "Did Allen maliciously induce the company to discharge the plaintiffs, and did he maliciously induce the company not to engage them?" and it was held if the defendant's action was in itself lawful it was not made unlawful by the motive. It is a very different thing to do a lawful act with a proper motive, and to do an illegal act with a malicious motive. The facts in the case of *Allen* v. *Flood* are entirely different from the facts presented in this record. There was no contract in that case, the breach of which was induced by the defendant. Here, existing contracts, which were a property right in the plaintiff, (the appellee,) were broken; and this was brought about by the action of the defendants in inducing those contracting with her to violate their contracts. This caused a right to be taken away, in consequence of which she was injured and damaged.

After a careful consideration of the case of *Allen* v. *Flood*, and with a full recognition of the importance of the principles involved in the questions presented by this record, we are constrained to adhere to what has been said in our opinion heretofore, and must deny the petition for rehearing.              *Rehearing denied.*