## A. M. Kauffman, Appellant, v. David J. Plank et al., Appellees.

1. RELIGIOUS SOCIETIES, § 39*—*when expulsion of member damnum absque injuria.* Loss suffered by a person by reason of his being expelled from a church membership was *damnum absque injuria.*

2. RELIGIOUS SOCIETIES, § 39*—*when injury to member by expulsion not remediable.* In trespass against bishops of a church for expelling plaintiff from membership, where damages were sought because such expulsion caused plaintiff's father-in-law to break a contract he had with plaintiff, the injury was not one for which redress could be had in a civil court.

3. ACTION ON THE CASE, § 11*—*when breach of contract not attributable to expulsion from religious society.* In trespass against bishops of a church for expelling plaintiff from membership; where damages were claimed because such expulsion caused plaintiff's father-in-law to break a contract he had with plaintiff, the fact that between the act of defendants and the damage sustained, there was the intervening belief of the father-in-law which caused him to prefer to evict plaintiff rather than oppose the decree of the church, broke all connection between the alleged wrongful expulsion and the damage.

Appeal from the Circuit Court of Douglas county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1918. Affirmed. Opinion filed April 29, 1919.

A. L. GILLIOM and CHARLES TROUP, for appellant.

JOHN H. CHADWICK and P. M. MOORE, for appellees.

MR. JUSTICE WAGGONER delivered the opinion of the court.

This is an action of trespass on the case brought by the appellant, A. M. Kauffman, against the appellees, David J. Plank, Andrew J. Mast, Joseph Schrock, Abraham Schrock, Samuel Beachey and Eli Otto for $25,000 damages. To a declaration of three counts a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

demurrer was sustained, and the plaintiff electing to stand by his declaration, a judgment was rendered against him, and the case brought here by appeal.

The substance of the declaration, so far as we consider it necessary to state the same, is that the plaintiff and the defendants were members of the Amish Mennonite Church, a voluntary religious organization, whose principles, creed, doctrines and code of discipline rest wholly in custom; that the defendants, Plank and Mast, are bishops in such church and the other defendants ministers; that under the doctrines of the church all matters in dispute of an ecclesiastical nature which arose between the members were finally settled by a church trial, at which all members of the congregation, excluding the parties to the controversy, were the judges; that no member should be tried without first being duly charged before the bishop with an offense against the principles of the church, and without being notified of the charge, its nature and the time and place of trial, and without an opportunity to be heard and introduce evidence; that when any one was excluded from the church a decree of alienation was pronounced against him, and the rest of the members were bound not to have any business or other dealings with the member so excluded, and should not socially, financially, pecuniarily or otherwise deal with him; that one Joel Miller, the father-in-law of the plaintiff, was the owner of 260 acres of land upon which plaintiff resided under an agreement with Miller, by which the plaintiff was to cultivate and improve the same, and the farm should become the property of himself and wife, and the plaintiff so resided on the farm from 1897 to 1914, making valuable and permanent improvements, and that Joel Miller would have carried out and fulfilled the contract had it not been for the malicious acts of the defendants; that in 1912 defendant Plank entered into a written contract with one Trexler for the trans-

fer of certain real estate and Plank refused to perform said contract, and Trexler, being a neighbor of the plaintiff and not a member of said church, requested the plaintiff to use his influence with the defendant Plank to secure the performance of such contract; that the plaintiff was under the belief that the defendant Plank was seeking to avoid his obligation under the contract, and under this belief the plaintiff undertook to influence Plank to perform it, and save the defendant Plank's reputation for fair dealings as a bishop of the church, and further to safeguard the reputation of said religious sect; that the plaintiff was unable to induce Plank to perform the contract; that the plaintiff and Plank differed as to the proper construction of it, and failing to agree the question was brought before a meeting of the Amish Mennonite congregation; that at such meeting the contract was construed and the conclusion reached that the defendant Plank had taken a wrong view of the matter, and should satisfactorily adjust his differences with Trexler; that the defendant Plank failed to adjust his differences with Trexler, whereupon Trexler requested the plaintiff to use his influence with Plank to effect a settlement, and this the plaintiff attempted without result, whereupon the congregation met for the purpose of reconsidering the proper construction of the contract, and at the meeting the conclusion was reached that both constructions placed on the written contract by the plaintiff and the defendant were probably reasonable constructions, and the plaintiff was requested to grant to the defendant Plank the privilege of construing the contract as he had theretofore construed it, whereupon the plaintiff refused, and thereupon the defendants wilfully, maliciously, wrongfully and arbitrarily constituted themselves a tribunal and went into executive session, the object of which was unknown to plaintiff, and later emerged into the presence of the

congregation, and without first having permitted a vote by the members of the congregation announced that they had expelled the plaintiff from membership in the congregation and without assigning any reason, and pronounced a decree of alienation, forbidding the membership to further deal with the plaintiff socially, financially or pecuniarily, thereby excluding the plaintiff from his rightful membership in said congregation without a trial, without notice, and without knowledge of any charge upon which he was to be tried; and that in consequence of the wilful, malicious and wrongful acts of the defendants, and the decree so pronounced by them, the plaintiff was excluded from the membership of the church and the members were precluded, by virtue of the decree and rules of the church, from having further business or social intercourse with the plaintiff, and in consequence thereof, Joel Miller, who was a member of the church, and felt morally and religiously bound by the decree so pronounced, was then and there induced to and did break his contract with the plaintiff, and immediately caused the plaintiff to be evicted from the farm upon which he had made lasting and valuable improvements, whereby and by reason of the wrongful, malicious and wilful acts of the defendants in arbitrarily and illegally expelling plaintiff from the church organization and thereby inducing his father-in-law to break his contract with the plaintiff, plaintiff lost his interest in the farm to the damage of the plaintiff of $25,000.

In brief, the declaration charges that the defendants wrongfully expelled the plaintiff from the church and because of the expulsion plaintiff's father-in-law, who was a member, refused to perform his contract with the plaintiff, and that the plaintiff was damaged, etc. The gist of the grievance, as alleged in the declaration, is wrongful expulsion from the church. It is alleged that such expulsion caused the father-in-law to break

his contract to the plaintiff's damages. Under the theory of the declaration, if the expulsion was proper, there would be no cause of action. That this theory is wrong is made apparent when we remember that even if the expulsion was right, still it would not justify the father-in-law in breaking the contract. From the standpoint of the civil courts, the defendants owed the plaintiff no duty in respect to his membership in the church. That is, even if he was wrongfully expelled, no remedy is given by a civil court. The question of whether he was rightfully or wrongfully expelled is within the exclusive jurisdiction of the church. *(Fussell v. Hail,* 233 Ill. 73 (77); *German, etc. v. Deutsche Gemeinde,* 246 Ill. 339; *Presbyterian Church of Lincoln v. First Cumberland Presbyterian Church of Lincoln,* 245 Ill. 90.)  It is only the violation of a right for which a remedy is given. A man may suffer great loss and yet have no right violated. The law denominates such a loss *damnum absque injuria.* (Perry on Common Law Pleadings, p. 12.)  In this case, the injury sustained was not an injury for which redress is given in a civil court. That there was no duty owed is apparent from the further fact that between the act of the defendants and the damage sustained is the intervening belief of the plaintiff's father-in-law, which caused him to prefer to evict the plaintiff rather than oppose the decree of the church. This belief breaks all connection between the alleged unlawful expulsion and the damage. Such damage would follow as surely in case of rightful as in case of wrongful expulsion, and a civil court cannot determine whether it was right or wrong.

The cases cited by appellant are not in point. They are based on the duty that the defendants owed the plaintiff not to interfere with his contract right with his father-in-law. The declaration does not charge the defendants with inducing the plaintiff's father-in-law

to break his contract with plaintiff. So far as the allegations of the declaration go, the defendants never knew of the contract. If the declaration charged that the defendants, in order to induce a breach of the contract between the plaintiff and his father-in-law, conspired to expel the plaintiff from the church, knowing that thereby a breach would be induced, then it would charge a violation of a civil right and would state a cause of action. (*Doremus v. Hennessy,* 176 Ill. 608; Anson's Law of Contracts, sec. 279; Andrews Stephen on Pleading, sec. 20, p. 35.)

The circuit court did not err in sustaining the demurrer to the declaration and rendering judgment against plaintiff for costs.

*Judgment affirmed.*