[Civ. No. 9157. Second Appellate District, Division One.—May 15, 1935.]

J. KATZ, Appellant, v. SAM KAPPER et al., Respondents.

(1)

E. A. Kline for Appellant.

Fred E. Peterson for Respondents.

SHINN, J., *pro tem.*—This is an appeal by plaintiff from a judgment in favor of defendants after an order sustaining a demurrer to the complaint.

Plaintiff and defendants were rival wholesale fish dealers in the city of Los Angeles. The defendants Kapper, Isenberg, Baker and Simon comprised a single firm doing business under the name of "Central Market". The action is for damages alleged to have been sustained to plaintiff's business by reason of the acts of defendants, and for exemplary damages. The complaint alleges that plaintiff had a well-established wholesale fish business, the good will of which was valuable; that with the sole intention "to put the plaintiff out of business, ruin him, deprive him of his customers and custom, and to take away from him all of his business and trade, together with the good will, without any benefit to themselves", the defendants maliciously called meetings of the customers of plaintiff, threatened them that they would be driven out of business and ruined if they continued to purchase fish from plaintiff, but promised that if they purchased fish from defendants, they would be given substantial reductions in price, so that they could successfully compete with plaintiff and drive him out of business; that if said customers continued to buy from plaintiff, the defendants would open a retail store and would sell fish to the customers of plaintiff's customers at such low prices that plaintiff's customers would be driven out of business. It was further alleged that the defendants did open such a store, did widely advertise and sell fish at lower prices than either plaintiff or defendants could purchase the same, and at a loss to the defendants; that all of said acts were done for the purpose of driving plaintiff out of business, and that as a result thereof "a considerable number of said retailers and peddlers and customers ceased from doing business with plaintiff and made their purchases from these defendants to plaintiff's damage", etc.

To this complaint, defendants interposed a general and special demurrer, which was sustained by the court, and plaintiff declining to amend, judgment of dismissal was entered. The general demurrer presents the questions whether the purposes of the defendants were unlawful, and if lawful, whether they were sought to be accomplished by unlawful means.

■ In deciding whether the conduct of defendants, alleged in the complaint is actionable, it is necessary to apply certain well-settled rules relating to competition in business. These may be generally stated as follows: "Competition in business, though carried to the extent of ruining a rival, is not ordinarily actionable, but every trader is left to conduct his business in his own way, so long as the methods he employs do not involve wrongful conduct such as fraud, misrepresentation, intimidation, coercion, obstruction, or molestation of the rival or his servants or workmen, or the procurement of the violation of contractual relations. If disturbance or loss comes as the result of competition, or the exercise of like rights by others, as where a merchant undersells or oversells his neighbor, it is *damnum absque injuria.*" (15 R. C. L., p. 73, and cases cited.)

■ "It has long been a rule of the common law that a man has the right to start a store, and to sell at such reduced prices that he is able in a short time to drive the other storekeepers in his vicinity out of business, when, having possession of the trade, he finds himself soon able to recover the loss sustained while ruining the others." (Id. 79.)

■ "Any injury to a lawful business, whether the result of a conspiracy or not, is *prima facie* actionable, but may be defended upon the ground that it was merely the result of a lawful effort of the defendants to promote their own welfare. To defeat this plea of justification the plaintiff may offer evidence that the acts of the defendants were inspired by express malice, and were done for the purpose of injuring plaintiff and not to benefit themselves." (*Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581, at p. 603 [98 Pac. 1027, 16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550].)

These principles are stated and many supporting authorities are cited in *West Virginia Transp. Co.* v. *Standard Oil Co.,* 50 W. Va. 611 [40 S. E. 591, 88 Am. St. Rep. 895, 56 L. R. A. 804], and *Passaic Print Works* v. *Ely & Walker Dry-Goods Co.,* 105 Fed. 163 [44 C. C. A. 426, 62 L. R. A. 673].

There are cases relied upon by appellant, of which *Dunshee* v. *Standard Oil Co.,* 152 Iowa, 618 [132 N. W. 371, 36 L. R. A. (N. S.) 263], is a leading one, in which interference with business is held actionable. In that case, the defendant pursued a policy of selling gasoline and oil to plaintiff's customers from tank wagons purchased and used solely for that pur-

pose, initiating the practice for the purpose of driving the plaintiff out of business, and with the intention of discontinuing it when such purpose was accomplished. An action was held to lie because the object of the defendant was not to engage in real competition or to build up its own business but to ruin a business rival. The cases that follow this doctrine proceed on the theory that an act lawful in itself becomes unlawful if induced by a wrong motive. This principle is not generally recognized by English or American authorities. In California the Supreme Court in *Boyson* v. *Thorn,* 98 Cal. 578 [33 Pac. 492, 21 L. R. A. 233], adopted the rule that an act lawful in itself does not become unlawful because of a malicious or wrongful motive. *People* v. *Schmitz,* 7 Cal. App. 330 [94 Pac. 407, 15 L. R. A. (N. S.) 717], and *Parkinson Co.* v. *Building Trades Council, supra,* follow this principle. We may apply either rule to the facts of the present case with the same result because they both recognize the principle that detriment to business which is incidental to lawful competition is *damnum absque injuria.*

██ It very clearly appears from the allegations of the complaint that the primary purpose of the defendants was to acquire for themselves the business of plaintiff's customers, and that the detriment which would result to plaintiff's business from the accomplishment of defendants' purpose was incidental thereto. This view must be taken of the complaint, notwithstanding the allegation that the sole purpose was to drive plaintiff out of business. The defendants are not charged with making any effort to deprive plaintiff of his trade except by transferring the same to themselves. This is essentially business competition. The defendants did or threatened to do nothing other than to gain a business advantage proportionate to the losses sustained by plaintiff, and by the accomplishment of that end their purposes would have been satisfied. ██ It cannot be said that the methods used by the defendants were unlawful. They threatened plaintiff's customers with the ruination of their businesses if they continued to trade with plaintiff, but a threat is not unlawful if it is to do a lawful thing.

In *Union Labor Hospital* v. *Vance Lumber Co.,* 158 Cal. 551 [112 Pac. 886, 33 L. R. A. (N. S.) 1034], the trial court had found that the defendants had entered into certain contracts

detrimental to plaintiff's business solely for the purpose and with the intent to subserve their own interests. The Supreme Court said (p. 554): "But if this were not so, and their purpose were to injure the business of plaintiff, nevertheless, unless they adopted illegal means to that end, their conduct did not render them amenable to the law, for an evil motive which may inspire the doing of an act not unlawful will not of itself make the act unlawful."

The threats alleged in general terms are identified and particularized by the allegations that the defendants threatened to and did undersell the plaintiff and his customers at retail prices less than the wholesale prices at which the commodities could be purchased. These must be taken as the only acts of coercion either threatened or done, since no others are alleged. They were not unlawful nor were they committed in an unlawful manner. They related solely to the aims of the defendants to engage in business competition with plaintiff for the resulting business advantage to themselves.

The fact that the methods used were ruthless, or unfair, in a moral sense, does not stamp them as illegal. It has never been regarded as the duty or province of the courts to regulate practices in the business world beyond the point of applying legal or equitable remedies in cases involving acts of oppression or deceit which are unlawful. Any extension of this jurisdiction must come through legislative action. In this case no questions of statutory law are involved. The alleged acts of defendants do not fall within the category of business methods recognized as unlawful, and hence they are not actionable. The demurrer to the complaint was properly sustained.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.